UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY PEDEN,                               File No. 1:20-cv-00019

     Plaintiff,                          Hon.

v.

KNOLL, INC.,

     Defendant.

---

# COMPLAINT AND JURY DEMAND

---

## COMPLAINT

Plaintiff Nancy Peden, by her attorneys, Pinsky, Smith, Fayette & Kennedy, LLP, represents:

### A.  NATURE OF PROCEEDINGS

1.    Plaintiff seeks legal and equitable relief regarding deprivation of certain rights secured by the Age Discrimination in Employment Act of 1967, the same being 29 U.S.C. §§ 621-634.  Such relief is authorized under 29 U.S.C. § 626(b)(c). Plaintiff alleges she was harassed and ultimately terminated due to her age.

2.    Plaintiff further brings an action under Michigan's Elliot Larsen Civil Rights Act ("ELCRA") MCLA 37.2013 and 37.2202, for the same.

1

3.     Plaintiff additionally brings this action to request that the Court remedy violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et. seq.*, in both interference and retaliation.

## Jurisdiction, Venue and Parties

4.     This Court has jurisdiction pursuant to 29 U.S.C. §626(c)(d).

5.     All conditions precedent to jurisdiction have occurred and been complied with, to wit:

(a)     Charges of employment discrimination on the basis of age have been filed with the Equal Opportunity Employment Commission ("EEOC") within 300 days of the commission of the unlawful employment practices alleged herein. The charge was filed alleging discrimination, harassment, discipline and discharge due to Plaintiff's age (Attached as Exhibit A).

(b)     More than sixty (60) days have passed since the filing of the charges of unlawful discrimination with the EEOC pursuant to 29 U.S.C. §626(d) allowing Plaintiff to bring this action.  Plaintiff's Right to Sue letter was issued on December 5, 2019 (Attached as Exhibit B).

6.     Plaintiff is a resident of Muskegon County, Michigan, and the Western District of Michigan, Southern Division.  At the time the claims set forth herein arose, Plaintiff was within the age limits established by 29 U.S.C. §631.

7.     Defendant is a for profit corporation organized under the laws of the State of Delaware, qualified to do business in Michigan and doing

2

business in Michigan and the Western District of Michigan, Southern Division.  Its corporate offices are in the State of Pennsylvania.

8.     Venue is proper within this judicial district under 28 U.S.C. §1391(b).

9.     Pendant jurisdiction is appropriate under 28 U.S.C. §1367.

## Statement of Facts

10.    Plaintiff incorporates paragraphs 1 through 9 as though set forth herein.

11.    Plaintiff was employed by Defendant on April 6, 2000.  On August 22, 2018, she was discharged for alleged violation of certain workplace rules.  Plaintiff was initially a Production Coordinator for an assembly line, then became a Stockkeeper in Shipping/receiving department in late 2015.  Her job responsibilities included ensuring that products were staged for assemblers, and keeping management informed of issues.

12.    Plaintiff during her employment by Defendant performed her job in an entirely satisfactory manner, as reflected by her excellent performance evaluations.

13.    In approximately 2014, Wendi Rudholm began working at Knoll in a Human Resources capacity. Shortly after Ms. Rudholm was hired, Sarah Wheeler was appointed as supervisor of Plaintiff's department.

14.    Initially, Plaintiff's working relationship with Ms. Wheeler was positive, and her first performance review from Ms. Wheeler was excellent.

15.    After Ms. Wheeler has worked with Ms. Rudholf for some time, she began to harass Plaintiff about her performance and job duties. Then in the summer of 2015, Ms. Wheeler asked Plaintiff to join her in Ms. Rudholm's office. There, both Ms. Wheeler and Ms. Rudholm questioned Plaintiff, yelled at her, and accused her of being a "bully," Which was far from the truth. Plaintiff had always maintained positive workings relationships with her coworkers.

16.    Plaintiff became aware that Ms. Wheeler had a reputation among other Production Coordinators and supervisors for shouting and intimidation in meetings. The people being targeted were, like Plaintiff, both older and at the top of their respective wage scales.

17.    Because Plaintiff felt threatened by the behavior of Ms. Wheeler and Ms. Rudholm toward her, she made the decision to transfer to a Stockkeeper position in the shipping and receiving department at Knoll.

18.    For the next two years, things went well for Plaintiff in her new department, and she received good performance reviews.

19.    Plaintiff received two minor violation notices during her time in the parts department, neither of which required further disciplinary action. On September 9, 2017, Plaintiff received a verbal warning for talking with a

coworker about a union drive on company time. In May of 2018, Plaintiff received a written warning for using her personal phone at work, though she had apprised her supervisor that her daughter was having serious issues that may require occasional contact during work hours.

20.     In July of 2018, Plaintiff needed surgery on her right knee and requested and received approved FMLA leave Plaintiff's recovery required her to take a leave of absence for four weeks while she healed. Two days after returning to work from FMLA leave, on August 14, 2018, Plaintiff received a part request for the sanding department from Sarah Bertatelli. Plaintiff fulfilled the request and then hand-delivered the part to Ms. Bertatelli, who appeared to not recognize the order. She asked Plaintiff, "What is that?" Plaintiff replied that she had received the order for delivery to Sanding, so she dropped off the part and returned to the stock room.

21.     Shortly after, the Assistant Supervisor of the painting department, Jason Bowen, brought the part to Plaintiff and informed her it was the wrong part. Plaintiff reviewed the part order, confirmed that Mr. Bowen was correct, apologized for her error and ensured him that she would correct it. She then delivered the correct part to Ms. Bertatelli's work bench and returned to the stock room.

22.     Later that day, Plaintiff's supervisor, Mark McNeice, left a copy of an email on Plaintiff's workstation. The email had been circulated by Mr.

Bowen to several other supervisors and managers. It stated that Plaintiff had been told by Ms. Bertatelli that she had delivered the wrong part, and that Plaintiff had ignored this information and returned to her workstation without correcting the error.

23.    Plaintiff felt uncomfortable with the email and took it to Mr. Bowen to discuss her concerns. She respectfully asked him why he had sent the email to management without speaking to Plaintiff first about his concern.

24.    Plaintiff then approached Ms. Bertatelli and told her that she was concerned about the inaccuracies that had been circulated by Mr. Bowen in the email. After some discussion, Ms. Bertatelli agreed that Plaintiff likely did not hear her when she told Plaintiff she had delivered the wrong part. This conversation was direct but respectful, and there were at least two other coworkers present at the time.

25.    Plaintiff finally approached upper management of her department, Don Heuschele, to ensure that he understood her perspective on what had occurred earlier that day. Mr. Heuschele assured Plaintiff that he understood her concern, and stated that he agreed the incident wasn't handled properly by either Mr. Bowen or Ms. Bertatelli. He told Plaintiff that he had already taken care of it, and she had nothing to worry about.

26.     Shortly after Plaintiff's meeting with Mr. Heuschele, she was approached by Mr. McNeice who assured her that the issue was take care of. He told her what had happened was "stupid" and that she did not need to worry about it.

27.     The next morning, upon Plaintiff's arrival to work, she was approached by Mr. McNeice who said, "This thing is not going away." Mr. McNeice appeared to be in disbelief that the incident had not been resolved. He told Plaintiff that it might help if she went to Ms. Bertatelli and apologized to her.

28.     Plaintiff followed Mr. McNeice's advice and apologized to Ms. Bertatelli in person. Ms. Bertatelli responded that she got "way over sensitive" about the incident that had occurred the day prior. Plaintiff and Ms. Bertatelli had a good conversation, and hugged before returning to work. Their coworker Dana Corrigan was present during this conversation.

29.     Later that afternoon, Mr. McNeice came to Plaintiff and said, "I'm sorry, but we have to go to Wendi's office." Once there, Ms. Rudholm told Plaintiff she was disappointed that Plaintiff had resolved the issue with Ms. Bertatelli on the floor rather than through Human Resources. She then asked Plaintiff for her badge and suspended her immediately.

30.     One week later, on August 22, 2018, Plaintiff was terminated from her employment with Defendant. At the time of her discharge she was

7

52 years old, having a birthdate of May 5, 1967, and had been employed by Defendant for nearly nineteen years.

31.    Plaintiff represents that age was a determining factor with respect to her discharge by Defendant and said employment decision was willful.

32.    As a result of Plaintiff's discharge by Defendant, she lost earnings and benefits, and suffered mental and emotional distress.

**Cause of Action**
**COUNT I. - FEDERAL AGE DISCRIMINATION**
**IN EMPLOYMENT ACT**

33.    Plaintiff incorporates paragraphs 1 through 32 as if set forth herein.

34.    Defendant, by disciplining Plaintiff as aforesaid, violated 29 U.S.C. §623(a) in that it has discriminated against Plaintiff because of her age.

35.    Defendant, by discharging Plaintiff as aforesaid, violated 29 U.S.C. §623(a) in that it discriminated against her because of her age, and such discrimination was willful.

36.    Plaintiff was discharged without being subjected to progressive discipline as was customarily applied to employees at Defendant in the same or similar circumstances as Plaintiff, and even though she had engaged in a practice that had been customary for many years.

37.    Plaintiff was replaced by a person substantially younger than she.

38.    The practices described above were intentional and designed to deprive Plaintiff of equal employment opportunities.

39.    The unlawful employment practices complained of above were committed with malice or with reckless indifference to the federally protected rights of Plaintiff. As a result of the foregoing, Plaintiff lost earnings and benefits, and suffered mental anguish and emotional distress for which Defendant is liable.

<u>Statutory Prerequisite</u>

40.    Plaintiff filed a charge of age discrimination on or about October 8, 2018 with the Equal Employment Opportunity Commission (EEOC) and within 300 days of the commission of the unlawful employment practice alleged herein.

41.    Plaintiff received a Notice of Right to Sue from the EEOC dated December 5, 2019.

42.    This action has been filed within ninety (90) days of the receipt of said Notice of Right to Sue.

## Relief

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

a)    Award to Plaintiff for back pay, front pay, and lost benefits and prejudgment interest;

b)    An award to Plaintiff compensatory damages for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, and inconvenience, in amounts to be determined at trial;

c)    Award to Plaintiff punitive damages for Defendant's malice or reckless indifference to Plaintiff's rights as described above;

d)    Award to Plaintiff her costs, disbursements, and reasonable attorney fees; and

e)    Such other legal and equitable relief as may be appropriate, just and equitable.

<u>COUNT II. –</u>
<u>VIOLATION OF FMLA</u>

43.      Plaintiff incorporates paragraphs 1 through 42 as though set forth herein.

44.      Defendant Knoll violated 29 U.S.C. § 2615(A)(1) when it interfered with Plaintiff's FMLA rights and retaliated against her for exercising them.

45.      Defendant's actions were unlawful and a malicious attempt to harass, intimidate and punish Plaintiff for exercising her rights under the Act.

46.      As a result of Defendant's actions as aforesaid, Plaintiff is entitled to damages for lost wages and benefits (Section 107(a)(1)(A)(i)(I) of FMLA, 29 U.S.C. §2617(a((1)(A)(i)(I)), interest thereon (Section 107(a)(1)(A)(ii) of FMLA, 29 U.S.C. §2617(a)(1)(A)(ii)), liquidated damages in an amount equal to the lost wages and employment benefits (Section 107(a)(1)(A)(iii) of FMLA, 29 U.S.C. §2617(a)(1)(A)(iii)), and fees and costs, including actual reasonable attorney's fees (Section 107(a)(3) of FMLA, 29 U.S.C. §2607(a)(3)).

<u>Relief</u>

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

      a)    An amount equal to lost earnings and benefits;

      b)    Liquidated double damages;

      c)    Plaintiff's costs and interest herein and reasonable attorney's fees;

      d)    An order reinstating Plaintiff in an appropriate position; and

      e)    Such other legal and equitable relief as may be appropriate to effectuate the purpose of said Act.

## <u>COUNT III –</u><br><u>MICHIGAN'S ELLIOTT LARSEN CIVIL RIGHTS ACT</u>

47.    Plaintiff incorporates paragraphs 1 through 46 as though set forth herein.

48.    Defendant by its conduct as aforesaid, violated Michigan's Elliot Larsen Civil Rights Act, specifically MCLA 37.2013 and 37.2202, in that it discriminated against and terminated Plaintiff because of Plaintiff's age. Such discrimination was willful.

49.     Plaintiff seeks legal and equitable relief regarding deprivation of certain rights secured by Michigan's Elliott Larsen Civil Rights Act of 1976, as amended; specifically, MCLA 37.2013 and 37.2202.

50.     This Count III is separate and independent of the claims set forth in Count I but is between the same parties and is based upon the same operative facts as set forth in Count I.

51.     Judicial economy, convenience, and fairness to the parties herein will be furthered if the whole case is tried at one time.

52.     As a result of Plaintiff's discharge by Defendant, she lost earnings and benefits and suffered mental anguish and emotional distress.

## Relief

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

a)     Award to Plaintiff for back pay, front pay, and lost benefits and prejudgment interest;

b)     An award to Plaintiff compensatory damages for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, and inconvenience, in amounts to be determined at trial;

13

c)      Award to Plaintiff punitive damages for Defendant's malice or reckless indifference to Plaintiff's rights as described above;

d)      Award to Plaintiff her costs, disbursements, and reasonable attorney fees; and

e)      Such other legal and equitable relief as may be appropriate, just and equitable.

PINSKY, SMITH, FAYETTE & KENNEDY, LLP

Attorneys for Plaintiff

Dated: January 10, 2020        By  */s/ Katherine Smith Kennedy*
                               Katherine Smith Kennedy
                               146 Monroe Center, N.W., Suite 805
                               Grand Rapids, MI 49503
                               (616) 451-8496

<u>**JURY DEMAND**</u>

NOW COMES Plaintiff, Nancy Peden, by and through her attorneys,

Pinsky, Smith, Fayette & Kennedy, and hereby demands a trial by jury of the

entitled matter.

PINSKY, SMITH, FAYETTE & KENNEDY, LLP
Attorneys for Plaintiff

Dated: January 10, 2020          By  */s/ Katherine Smith Kennedy*
Katherine Smith Kennedy
146 Monroe Center St NW, Suite 805
Grand Rapids, MI  49503
(616) 451-8496